**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maxwell Monsanto,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>DWW Partners, LLLP, an Arizona limited liability partnership, d/b/a Right Honda; DWW AZ, Inc., an Arizona corporation, d/b/a Right Honda; David Wilson Automotive Group, a California corporation, d/b/a Right Honda,<br><br>　　　　　Defendants. | No. CV-09-01788-PHX-FJM<br><br>**ORDER** |

Plaintiff Maxwell Monsanto brings this employment discrimination, retaliation, and constructive discharge action under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 against defendant DWW AZ, Inc., doing business as Right Honda. The court has before it defendant's motion to compel arbitration and stay proceedings (doc. 11), plaintiff's response (doc. 16), defendant's reply (doc. 19), and plaintiff's supplemental response (doc. 24).

**I.**

In 2008, plaintiff applied for and began employment at Right Honda, an Arizona car dealership. Defendant alleges that plaintiff signed an employment application containing an agreement to arbitrate employment-related disputes on September 29, 2008 ("September

1  agreement"). On October 1, 2008, plaintiff's first day of work, defendant alleges that he
2  signed two additional documents containing identical arbitration clauses which differed from
3  the September agreement and purported to supersede any prior arbitration agreement
4  ("October agreements"). The October agreements were entitled "Employee
5  Acknowledgment and Agreement" and "Comprehensive Agreement Employment At-will and
6  Arbitration." While the September agreement called for a retired California judge to serve
7  as the arbitrator, California procedural rules, and an appellate process with a second
8  arbitrator, the October agreements contained Arizona-specific terms without an opportunity
9  for arbitral appellate review.

10  After plaintiff filed this action, defendant moved to compel arbitration under the
11  October agreements (doc. 11). Plaintiff responded by challenging the authenticity of the
12  signatures on the agreements and requesting a jury trial on the issue (doc. 16). He averred
13  that he did not agree to arbitrate any employment dispute with Right Honda. He also offered
14  an examiner's opinion that the signatures were probably not genuine based on a comparison
15  with eight unidentified documents. In its reply, defendant raised the September agreement
16  as an additional reason to compel arbitration and claimed that plaintiff's affidavits were
17  insufficient (doc. 19). It also submitted an examiner's opinion referencing thirty-five
18  attached documents apparently signed by plaintiff, including eighteen documents dated
19  October 1, 2008. The examiner claimed to have identified the signatures on the September
20  agreement and one of the October agreements as plaintiff's. He also said that there was a
21  strong probability that plaintiff signed the other October agreement.

22  In an order granting plaintiff an opportunity to respond to defendant's new evidence,
23  we noted that plaintiff neither averred that he did not sign the October agreements nor
24  identified the documents his examiner reviewed (doc. 23). We invited plaintiff to submit
25  appropriate and specific affidavits. He did not do so. In a supplemental response, he instead
26  conceded that he signed the September agreement and claimed that all three arbitration
27  agreements were unenforceable for a variety of reasons (doc. 24). Although plaintiff failed
28

1 to raise these concerns in his original response with respect to the October agreements, we
2 will address them on their merits.

**II.**

4 Defendant moves to compel arbitration on the basis of either the September agreement
5 or the October agreements. Under the Federal Arbitration Act ("FAA"), we must give effect
6 to valid and enforceable arbitration agreements. 9 U.S.C. § 4. Such agreements "shall be
7 valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for
8 the revocation of any contract." Id. § 2. Plaintiff opposes arbitration. He contends that the
9 September agreement does not cover his statutory claims, fraudulently misrepresents the
10 costs and efficiency of arbitration, and is unconscionable due to the cost of using California-
11 specific terms with a right to appeal to a second arbitrator. He contends that the October
12 agreements are forgeries. With respect to all three agreements, he claims that arbitration
13 costs would prevent him from effectively vindicating his federal rights. Plaintiff also claims
14 that these prohibitive costs and a privileged-communications term render the agreements
15 unconscionable. Moreover, he asserts that they lack of formation and contain conflicting
16 terms. Because either October agreement superceded the September agreement if found
17 valid and enforceable, we will consider the October agreements first.

18 Plaintiff's primary objection to the October agreements is that his apparent signature
19 on the documents is not genuine. Under the FAA, a party who places the validity of an
20 arbitration agreement in issue is entitled to a jury trial. Id. § 4. The validity of an arbitration
21 agreement may be placed in issue with an unequivocal denial that an agreement has been
22 made and some evidence to substantiate the denial. Chastain v. Robinson-Humphrey Co.,
23 957 F.2d 851, 854 (11th Cir. 1992) (citation omitted). In a similar case involving an
24 employment-related arbitration agreement, a court found an employee's forgery claim
25 colorable where she submitted an affidavit "stating that she did not sign the arbitration
26 agreement, that it does not contain her signature, and that she believes her purported
27 signature is fraudulent and her initials fabricated." Brooks v. Robert Larson Auto. Group,
28 No. C09-5016, 2009 WL 2853452, at *4 (W.D. Wash. Sept. 1, 2009). Here, in contrast,

plaintiff relies on a general averment that he did not agree to arbitrate employment-related disputes and an examiner's opinion based on unidentified documents. When prompted, he failed to respond with specific and appropriate affidavits. And he now concedes that he signed at least one employment-related arbitration agreement despite his general averment. In support of the agreements' validity, defendant offers an examiner's opinion based on over a dozen documents plaintiff apparently signed contemporaneously with the October agreements. Under the circumstances, we conclude that the validity of the October agreements is not genuinely in issue.

Next, plaintiff contends that the October agreements are unenforceable because the expense of arbitrating would preclude the vindication of his federal statutory rights. Agreements to arbitrate federal claims are not unenforceable merely because they are silent with respect to arbitration costs. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91, 121 S. Ct. 513, 522 (2000). Instead, parties who seek to avoid arbitration on the basis of prohibitive costs bear the burden of showing the likelihood of incurring such costs. Id. at 92, 121 S. Ct. at 522. Plaintiff has not met his burden. The October agreements are silent on costs and call for a retired Arizona Superior Court judge to serve as the arbitrator with the ability to extend certain deadlines. Plaintiff claims that the use of a retired judge and the potential for delay would render arbitration under the agreements too expensive. Plaintiff's counsel avers that she contacted fourteen Arizona arbitrators who charge $350 per hour on average, including at least two retired Superior Court judges who charge $375 and $475 per hour. She also avers that plaintiff has "reportedly suffered financial difficulties." Baker Affidavit at 2. This evidence is too speculative to show that plaintiff would likely bear prohibitive arbitration costs.

Plaintiff also contends that the October agreements are unenforceable because they are both procedurally and substantively unconscionable. Under Arizona law, procedural unconscionability targets "unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." Maxwell v. Fid. Fin. Servs., Inc., 184 Ariz. 82, 88-89, 907 P.2d 51, 57-58 (1995) (citation omitted).

The arbitration language in the October agreements is clear and conspicuous. There is no evidence of procedural unconscionability. Plaintiff maintains that he was required to enter the agreements to gain employment and he lacked an ability to negotiate their terms. However, these factors merely point to the agreements being contracts of adhesion, which are fully enforceable unless contrary to reasonable expectations or otherwise unconscionable. See Broemmer v. Abortion Servs. of Phoenix, Ltd., 173 Ariz. 148, 151, 840 P.2d 1013, 1016 (1992) (citation omitted). Plaintiff does not contend, nor is there any indication, that defendant had any reason to believe that he would not accept the agreements' terms had he known about them. Thus, the inquiry depends on substantive unconscionability.

Substantive unconscionability is concerned with actual terms that are so one-sided as to oppress or unfairly surprise an innocent party. Harrington v. Pulte Home Corp., 211 Ariz. 241, 252, 119 P.3d 1044, 1055 (Ct. App. 2005). Plaintiff again points to the October agreements' terms calling for a retired judge with the ability to extend deadlines as imposing undue costs. Arizona's unconscionability doctrine follows Green Tree Financial on this issue and the result is the same as above: plaintiff's evidence of prohibitive costs is insufficient. See id. at 253, 119 P.3d at 1056. Plaintiff also contends that a term providing for communications in connection with arbitration proceedings to be privileged is unconscionable. This basic confidentiality provision is neither overly broad nor unfairly one-sided. It is not substantively unconscionable. We conclude that the October agreements are not unconscionable.

Finally, plaintiff challenges the agreements on formation grounds by contending that they lack essential terms concerning arbitration costs and the selection of an arbitrator. However, a term establishing the payment of arbitration costs is not essential to an arbitration agreement. See id. at 252, 119 P.3d at 1055. And the October agreements provide for a retired Arizona Superior Court judge to serve as the arbitrator using Arizona Superior Court rules for disqualification. The agreements do not fail for lack of formation.

The October agreements are valid and fully enforceable. Therefore, the September agreement was superceded and we need not consider it. We note for plaintiff's benefit that

his contention that the scope of the September agreement does not cover Title VII claims is based on a misreading of the agreement. The agreement provides a box, which is unchecked, allowing potential employees to opt out of arbitrating Title VII claims, not to opt in. Because the September agreement was superceded, it is obviously not in conflict with the October agreements.

Accordingly, **IT IS ORDERED GRANTING** defendant's motion to compel arbitration and stay proceedings (doc. 11). The parties shall submit this matter to arbitration pursuant to the terms of the arbitration clause found in both October agreements. This action is stayed until June 1, 2010.

DATED this 15th day of January, 2010.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge